## George Moore *v.* The State.

1. EVIDENCE — PRACTICE. — Premature admission of evidence is not error when its competency is shown by that which was subsequently adduced, — as, for instance, the admission of incriminating declarations of an accomplice before the complicity was shown.

2. SAME. — Over the defendant's objection, the court below admitted certain testimony, but afterwards ruled it out and instructed the jury to disregard it. *Held*, that the error, if any, was corrected in the court below, and avails nothing here.

3. SAME — ASSAULT WITH INTENT TO MURDER. — Inasmuch as an indictment for assault with intent to murder includes the minor offences known as aggravated and simple assaults, evidence of these latter offences is admissible in a trial for the former.

4. PRESUMPTION OF REGULARITY. — Defendant offered a witness to whom the State objected because, as alleged in the bill of exceptions, the State's attorney "claimed that the proposed witness was indicted for the same offence in a different indictment, and was a principal in the commission of the offence." The objection was sustained and the witness excluded, but, aside from the objection itself, the record nowhere discloses the showing on which the ruling was based. *Held*, that the presumption of regularity obtains, and no error is apparent.

5. PRACTICE. — The Code of Procedure authorizes the introduction of testimony "at any time before the argument of a cause is concluded, if it appears

that it is necessary to the due administration of justice." *Held*, that this invests the courts below with a discretion which will not be revised on appeal, unless shown to have been abused to the prejudice of the appellant.

6. Same. — Defendant desired to recall his own witness for the purpose of having him repeat to the jury a statement made by him on his prior examination. The witness having disappeared, defendant was awarded an attachment for him, and the trial was adjourned until the ensuing morning, when, the witness not being forthcoming, the court required the trial to proceed, notwithstanding defendant's objection urged on the score of surprise. *Held*, that no prejudice to the defendant appears, nor any error in the ruling of the court.

7. Verdict. — A verdict is good which, convicting the defendant of a felony, assesses his punishment at "hard labor in the State prison" for a definite and lawful number of years, inasmuch as the penitentiary is the only State prison known to the law, and hard labor a statutory concomitant to confinement therein.

Appeal from the District Court of Van Zandt. Tried below before the Hon. J C. Robertson.

The indictment charged George Moore, the appellant, with an assault on B. H. Pigues, with intent to murder him, and alleged that the assault was made with a loaded gun, on the 1st of November, 1878.

The encounter occurred in the storehouse of W. W. Kinlock, in the village of Grand Saline, Van Zandt County, and appeared to have grown out of animosity between Pigues and N. B. Moore, the father of the appellant, who is a youth of sixteen or seventeen.

Kinlock, the principal witness for the State, testified that about dark in the evening of November 1, 1878, the appellant and his father came into witness's store, and N. B. Moore remarked that Pigues had been running over him, and he was not going to stand it much longer. In a few moments, Pigues came in, and, addressing N. B. Moore, said : " Nub, what parties have told you is a G—d d—n lie, and I have nothing against you ; but I am the best G—d d—n man in Grand Saline, and am not afraid of you." Pigues put his hand on his pistol, and N. B. Moore ran his hand in his pocket, and said, " Let us let all that drop just where

it is." Just then the defendant, George Moore, who had been standing in the rear of Pigues, raised and presented at him a gun, the hammer of the right-hand barrel of which was cocked. This gun was loaded with duck-shot, and had been left at the store by a young man two or three weeks before. It stood against the wall, near where the defendant was standing. Observing the defendant present the gun, witness spoke to Pigues and said, "Look behind you!" Pigues turned and sprang at the defendant, seized the gun, and both went out of the door, scuffling over it. N. B. Moore followed them immediately; and about the time he got out, witness heard three or four reports of fire-arms. In a few moments the witness also went out, and saw Pigues lying on his face, apparently dead. Obtaining assistance, witness carried him about a hundred yards to a house, and remained with him about half an hour, when he became conscious. Witness saw a small, round hole just under Pigues's left eyebrow. Leaving Pigues, the witness returned to his store, when N. B. Moore came in and showed witness Pigues's pistol, of which three barrels were empty, and seemed to have been recently discharged.

This witness further testified that when the difficulty commenced the only persons in the store were himself, Pigues, and the two Moores; N. B. Moore was in his shirt-sleeves, and exhibited no pistol; that the gun was discharged immediately after Pigues and the defendant got out of the door, and the load took effect in the wall. After the affray, the gun was found with the muzzle full of dirt, and the lock and hammer of the right-hand barrel broken.

B. F. Pigues, testifying for the State, gave substantially the same account as Kinlock of so much of the affray as transpired in the store. As he and defendant went out of the door, he noticed N. B. Moore advance; and as the latter got out, he fired on witness with a pistol; and then the gun went off, and N. B. Moore fired at witness again; and then, after a profane exclamation, fired a third shot at witness,

which struck him under the left eyebrow, and he remembered nothing more until he found himself at his home. The injury confined him to his bed for three or four weeks, and had destroyed the sight of his left eye.

This witness stated that he did not fire a shot during the affair, nor attempt to do so. Three chambers of his pistol were empty when it commenced; he had discharged them at a hawk, about the middle of the day. He admitted that he was somewhat under the influence of whiskey at the time of the *rencontre*, but stated that he knew what he was doing. He and the two Moores had spent part of the day in a ten-pin alley, rolling for blackberry brandy.

The defence introduced Jack Bell, who stated that he was in Kinlock's store, and witnessed the beginning of the difficulty between Pigues and the two Moores. According to his testimony, the defendant did not present the gun at Pigues, nor attempt to raise it to a shooting position, but had it in his right hand, with the muzzle towards the floor, when Pigues turned upon him. This witness also had been indulging in blackberry brandy during the day. He stated that he did not know the nature of an oath, and could not say what would be done with him if he swore to a lie, but supposed he would go to the bad place.

The State recalled Kinlock and Pigues, and they testified that Jack Bell was not in the store when the difficulty began.

The defence proposed to recall Jack, but he was not to be found. An attachment for him was issued, and the court adjourned until the next morning; when the court required the trial to proceed, and the defence excepted on account of the absence of the witness, whom they needed for the purpose of having him repeat his statement that he was present in the store when the difficulty took place.

Under an able and ample charge from the court upon the law of assault with intent to murder, aggravated assault, and simple assault and battery, the jury found the defendant

guilty of assault with intent to murder, and assessed his punishment at " hard labor in the State prison for two years." A new trial was asked and refused, and he appealed.

*R. H. Allen*, for the appellant, filed an able brief.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J.    This appeal is from a judgment of conviction of an assault with intent to murder, the punishment being fixed at two years' confinement in the State penitentiary.   A number of causes of error are assigned as grounds of error upon which a reversal of the judgment of the District Court is asked here, and which we propose to consider, so far as necessary, in the order set out in the bill of exceptions taken at the trial, in connection with such other portions of the record as bear upon the various questions presented for consideration.

1. It is objected that the court erred in admitting certain testimony of the State's witness, Kinlock, to prove certain statements made by N. B. Moore prior to the difficulty, on the ground that it was not shown that the defendant was present when the statements offered to be proved were made, and that no conspiracy between the defendant and the person who made the statement was shown.   Whether the statements were strictly admissible at the time the testimony was offered or not, there can be no room for doubt that the further testimony developed the fact that, in the matter of the difficulty with the person alleged to have been assaulted, the defendant and N. B. Moore were acting in concert and in pursuance of a common design to such an extent as to make them principals, and on this ground the court did not err in admitting the testimony.   And so of the testimony of this same witness as to the condition of the assaulted party ; he merely related the condition of the party after the difficulty.

2. A witness named High was permitted to testify as to certain other statements made prior to the difficulty, over the objection of the defendant, in which statements something was said about the party injured in the difficulty coming to Grand Saline to run the town, and that N. B. Moore spoke of what he would do if he fooled with him. As to this testimony, it is stated in the record that the " court ruled it out, and instructed the jury not to consider it, but to discard it entirely from their minds." Under the circumstances, the presiding judge, if indeed he had erred in admitting the testimony in the first instance, corrected the error in a lawful manner; and the error, if any, being corrected, leaves no room for complaint, that we see.

3. The next complaint is that the State was permitted, over objection, to prove by the assulted party the effect of the wound upon him. The objection raised was to the effect that, the indictment being for assault with intent to murder with a gun, a deadly weapon, the State could not rely upon proof of serious bodily injury for a conviction. Unfortunately for the position, the indictment included lesser degrees than intent to murder, and under it competent evidence of an aggravated assault or a simple assault was admissible. There was nothing in this objection.

4. The question here is that the defendant offered to place N. B. Moore on the stand for the purpose of testifying in his behalf, which was objected to by the State, and the objection sustained, on the ground, as stated in the bill of exceptions, " because he (the State's attorney) claimed that the said N. B. Moore was indicted for the same offence in a different indictment," and that he was a principal in the commission of the offence. The circumstances surrounding this question are not well elucidated in the transcript; all on the subject is that stated in the bill of exceptions. Still, inasmuch as the venue is laid in the county where the trial was being had, it is fair to presume from what is stated that the grounds of objection were true, or

they would have been disproved ; and as the proposed witness, if he was in fact indicted for the same offence, could only have been properly indicted in the same court, it is to be inferred that the facts were either proved or conceded, or that the court took judicial cognizance of them under the general rule laid down by Mr. Greenleaf (vol. 1, sect. 6) : "Courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction. In all these and like cases, when the memory of the judge is at fault, he resorts to such documents for reference as may be at hand and he may deem worthy of confidence." We are of opinion the witness, being indicted for the same offence, was not competent, on the ground that he was a principal offender, and that this had been developed by testimony already before the jury. "Persons charged as principals, accomplices, or accessories, whether in the same indictment or by different indictments, cannot be introduced as witnesses for one another." Original Penal Code, art. 230 ; Rev. Penal Code, 36, art. 731 ; Pasc. Dig., art. 1826 ; *Myers* v. *The State*, 3 Texas Ct. App. 8.

5. It is here complained that after the defendant had closed his testimony the prosecution was permitted to recall a witness, and in rebuttal to ask him to restate his testimony ; it being contended that a mere repetition of his former statements was not in *rebuttal* of any thing produced by the defendant. The matter is about this : The defendant had introduced a witness who had given testimony as to what had occurred in the house in which the difficulty commenced, and the State's witness was recalled apparently for the purpose of proving that the defendant's witness was not in the house, he having stated that he was in the house when the fuss began. Whether the testimony offered could be said to be strictly in rebuttal or not, the evidence was admissible as tending to discredit the defendant's witness.

The Code of Procedure provides "that the court shall allow testimony to be introduced at any time before the ar-

gument of a cause is concluded, if it appear that it is necessary to the due administration of justice." Old Code, art. 581; Rev. Code, art. 661. It is evident that it is within the discretion of the court to determine when the due administration of justice requires the introduction of further testimony within the time prescribed. When such is the case, this court will not revise the action unless it be shown that the discretion confided to the jury below has been abused; which does not appear here.

6. Another grave matter, or rather another matter gravely complained of in the bill of exceptions, is this, as stated by counsel for appellant: " The defendant, after the State had closed her testimony in rebuttal, desired to reintroduce witness Jack Bell, to rebut some evidence drawn out by the State in the examination of the last witness; and when the said Jack Bell was called, it was found that he had left the court-room and could not be found." The defendant here seems to have asked the immediate issuance of an attachment for the missing witness. The attachment was ordered, and the court adjourned until the following morning, when, the witness not being forthcoming, the court ordered the trial to proceed, against the defendant's objection, " because he was taken by surprise at the absence of said witness, who had been duly subpœnaed and was in attendance upon the court, and whose evidence was material to this defendant. * * * The fact desired to be proved by said witness Bell was that he was in the house where the difficulty took place, at the time of the difficulty; which fact he had already testified to."

We are at a loss to determine how the rights of the defendant were prejudiced by this action, when the bill of exceptions shows, and the statement of facts confirms the fact to be, that the witness had already stated the fact the defendant wished to prove by him, unless it was to contradict the State's witness who had said he was not in the house, and thus have the last word. Having already had

the benefit of the statement, he was not injured by the order to proceed; and especially as this same witness, on cross-examination, had said he did "not know the nature of an oath," nor what would be done with him if he was to "swear a lie, but supposed he would go to the bad place."

In the motion for a new trial, several complaints are made against the charge of the court; but after carefully considering the charge, we are of opinion the objections are not well taken, and that there is no necessity of considering them *seriatim*.

The defendant made a motion and an amended motion for a new trial, and also a motion in arrest of judgment, all of which were overruled; and besides these, made a motion to correct the judgment against him, which last-named motion is not supported by the record. The grounds of the motion in arrest of judgment are, " because the verdict of the jury is informal, vague, uncertain, and assesses an impossible punishment; and because no legal judgment can be rendered upon it. And the sixteenth ground in the motion for a new trial is, because the verdict of the jury is not responsive to the charge of the court, is vague, uncertain, and assesses an impossible punishment."

The law which was in force at the time of the trial (Code Cr. Proc., art. 626 (Pasc. Dig., art. 3091; Rev. Code Cr. Proc. 85, art. 712) requires that, " where the plea is ' not guilty,' they (the jury) must find that the defendant is ' guilty' or ' not guilty'; and in addition thereto they shall assess the punishment in all cases where the same is not basolutely fixed by law to some particular penalty." The verdict under consideration is in the following language: " We, the jury, find the defendant guilty of an assault with intent to murder, and assess his punishment at hard labor in the State prison for two years." (Signed by the foreman.)

The jury performed the first duty imposed upon them by the first part of the article cited, and determined the issue

submitted to them, in that portion of the verdict which reads "We, the jury, find the defendant guilty of an assault with intent to murder." This was the first and most important duty imposed upon them. This was the offence charged in the indictment, and the highest degree of that offence known to the law; and thus far the verdict is not subject to criticism either as to form or substance. But the duty of the jury under the law did not end with determining the issue as to the guilt of the accused: they were required to go further, and in addition thereto assess the punishment to the extent not absolutely fixed by law to some particular penalty.

It is urged on the part of the appellee that in so far as the *place* of punishment is concerned, that is absolutely fixed by law, and that to that extent the juries have no concern; that their province extends no further than to fix the amount and duration of the punishment. If this, though novel, be the correct exposition of the law, then it would seem that the verdict is sufficient for the purposes of the trial. We confess that the question is not free from difficulty. From the limited time allowed us, and on investigation of the authorities furnished and those we have seen, we have found no adjudicated case which precisely meets the question, and we incline to the opinion that it has not before been presented for adjudication under the Texas Code. On examining the statute law of the State, we find that it is declared that " if any person shall assault another with intent to murder, he shall be punished by confinement in the penitentiary not less than two years nor more than seven years. If the assault be made with a bowie-knife or dagger [and by the Revised Code the words " or in disguise" are added], the punishment shall be doubled." Pasc. Dig. art. 2155; Rev. Code, art 500. And by another article it is provided that " whenever the penalty prescribed for an offence is imprisonment for a term of years in the penitentiary, imprisonment to hard labor is intended." Pasc. Dig.

art. 1676; Rev. Penal Code, art. 72. From these it seems that for this offence the law has determined absolutely the place of confinement, and the nature of the employment as at hard labor. These being absolutely fixed by law, and the limit allowed by law to the jury, the duty devolved upon them to assess the punishment within the limit prescribed. Have they performed this duty by assessing, as in the verdict, "his punishment to hard labor in the State prison for two years"? Does the place mentioned vitiate the verdict, or can it properly be treated as surplusage?

If we eliminate as surplusage the words *in the State prison*, the verdict would then be: "We, the jury, find the defendant guilty of an assault with intent to murder, and assess his punishment to hard labor for two years." It would seem that this, besides determining the guilt, fixes the extent of the imprisonment and its character, but does not name the place of confinement. We are of the opinion, however, that the words *in the State prison* are equivalent to the words *State penitentiary*, that being the only State prison known to the law.

Our sympathies have been enlisted on behalf of this young man. We find him, in company of his father, in a bowling-alley, where at least some of the parties were rolling ten-pins for and drinking medicated blackberry-brandy, and which is the introduction of the parties by one of the witnesses, and we are impressed with the belief that he has probably fared badly more on account of the bad company he was in than from any innate vice of his own; and it may be that, like one of old, the son's teeth were set on edge on account of the father having eaten sour grapes. Yet, after a careful investigation of the case, we find no such error or defect committed as would warrant an interference with the verdict and judgment. The judgment is affirmed.

*Affirmed.*